NOT DESIGNATED FOR PUBLICATION

No. 117,456

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

REGINALD FRAZIER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Geary District Court; RYAN W. ROSAUER, judge. Opinion filed May 25, 2018. Affirmed.

*Clayton J. Perkins*, of Kansas Appellate Defender Office, for appellant.

*Tony Cruz*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., LEBEN and SCHROEDER JJ.

PER CURIAM:  Reginald Frazier appeals the denial of his presentence motion to withdraw his plea. We find no error by the district court in denying his motion. The district court found the plea was fairly made and Frazier fully understood the consequences of his plea and what he was doing. We observe no good cause to allow Frazier to withdraw his plea. We affirm.

Frazier, the passenger, and his codefendant Tracy Gould, the driver, were arrested after a traffic stop on I-70. Lieutenant Justin Stopper found Gould was driving without a valid driver's license. During the traffic stop, Stopper received contradictory information

1

from Frazier and Gould about their travel plans from Las Vegas to their home in Ohio. As the traffic stop proceeded, Sergeant Christopher Ricard and his K-9 unit, Scooby, arrived on scene to check the vehicle. Scooby detected drugs in the vehicle. The officers searched the vehicle and discovered a loaded pistol in the front-passenger kick panel next to where Frazier was sitting. Officers also found 5 pounds of heroin in the trunk of the vehicle and $9,000 on Frazier. The State charged Frazier with seven counts: possession of heroin with intent to distribute; no drug tax stamp; conspiracy to possession heroin with intent to distribute; criminal transportation of drug proceeds; criminal transfer of drug proceeds; possession of drug paraphernalia; and criminal possession of a firearm.

Lt. Stopper later contacted the Springfield Ohio Police Department. Ohio law enforcement executed a search warrant on Gould's rental residence. Frazier also allegedly lived there. Ohio law enforcement seized 1.3 grams of methamphetamine; 16 grams of heroin; .1 ounce of crack cocaine; some unknown pills; $11,802; an AK-47; and two .22 caliber handguns.

Shortly after his preliminary hearing, Frazier dismissed his retained counsel and developed conflicts with his next two court-appointed attorneys. His fourth attorney, Lora Ingels, represented Frazier through the plea hearing.

With Ingels' assistance, Frazier entered into plea negotiations and pled nolo contendre to a single charge of possession of heroin with intent to distribute. In exchange, the State agreed to dismiss its remaining six charges and also agreed to recommend a durational downward departure to 96 months' imprisonment from a potential sentencing range of 160 to 176 months' imprisonment based on Frazier's criminal history. As part of the plea agreement, Frazier agreed to withdraw his pro se motion to suppress and serve the underlying prison sentence. The plea agreement also stated: "[T]he authorities in Ohio further agree to dismiss and/or not to file any charges resulting out of the search warrant that was obtained as a result of this arrest." However, the State of Ohio did not join in the

2

plea agreement and did not sign it. The district court conducted an extensive plea colloquy, and Frazier raised no objections to the plea agreement. Frazier admitted to understanding the plea agreement and his rights. He denied being under the influence of any substance that would impair his ability to understand what he was doing. Frazier admitted understanding the nature of the charges against him and the possible terms of his sentence. Frazier said Ingels addressed all of his questions and concerns. The district court found Frazier freely, voluntarily, and intelligently made his plea; he was competent to enter into his no contest plea; and he was satisfied with his attorney.

Later, Frazier filed a pro se motion to withdraw his plea (the motion is not in the record). Ingels was permitted to withdraw and a fifth attorney was appointed by the district court. The fifth attorney had a conflict of interest and withdrew.

Frazier's sixth attorney filed a brief in support of Frazier's pro se motion to withdraw Frazier's plea. At the hearing, Frazier testified Ingels had advised him that if he did not sign the plea agreement, he was going to be charged federally in Ohio and he would lose at trial. Frazier alleged at the time of the plea hearing, Ingels advised the court she had not spoken to any law enforcement authorities in Ohio. Frazier insisted he would not have signed the plea agreement if before the hearing he had known Ingels had not spoken to law enforcement in Ohio. When asked why Frazier previously advised the court he had entered the plea agreement voluntarily, Frazier stated, "I just felt like if I didn't go along with the program, I would be charged federally." Frazier claimed he felt afraid because Ingels told him "I was going to be doing 30, 40 years, if not more, if I didn't take this plea agreement." Frazier was also concerned when, after the plea hearing, he learned his codefendant's Geary County plea agreement was approved and signed by the Ohio authorities but his plea agreement was not signed.

At the plea withdrawal hearing, Ingels testified she relied solely on the prosecutor for any information related to possible Ohio charges. Ingels did not follow up with

3

authorities in Ohio. Additionally, Ingels testified she advised Frazier the State of Ohio was not going to pursue a federal indictment or state charges if he would agree to the plea agreement. But Ingels denied ever telling Frazier she had spoken to Ohio authorities. Ingels testified, "I told [Frazier] throughout that I never personally spoke with anyone in Ohio." Contrary to Frazier's allegations, the record of the plea hearing does not contain any statements regarding Ingels' conversations, or lack thereof, with Ohio authorities.

Relying on the three factors from State v. Edgar, 281 Kan. 30, 36, 127 P.3d 986 (2006), the district court denied Frazier's motion to withdraw his plea. The district court found Ingels provided competent counsel; she was working with him; and was familiar with the law and the nature of the case. The district court also found Frazier was not misled or coerced about the possibility of being charged in Ohio. Ingels had not made any false promises to Frazier—she was frank, upfront, and honest with him. The assistant county attorney had assured Ingels if Frazier pled to his Kansas charges, the authorities in Ohio would not seek prosecution. The district court was unwilling to set aside the plea based on a future possibility Frazier could later be charged in Ohio. Indeed, the district court noted nothing indicated the State of Ohio intended to charge Frazier. The district court further found Frazier was not coerced, he instead had a pair of bad or worse choices—take a plea with a proposed sentence of 96 months' imprisonment or go to trial and likely be convicted and serve substantially more time—a potentially valid point.

Additionally, the district court found Frazier had voluntarily, knowingly, and intelligently entered the plea of nolo contendre based on the benefits of the plea agreement to him. It found Frazier to be articulate and intelligent. The district court also noted Frazier did not lack capacity or competence but instead had a sufficient awareness of the circumstances and consequences of his plea. Frazier appealed.

"A plea of guilty or nolo contendere, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged."

4

K.S.A. 2017 Supp. 22-3210(d)(1). On appeal, the defendant must establish that the trial court abused its discretion in denying a presentence motion to withdraw plea. *State v. Schaal*, 305 Kan. 445, 449, 383 P.3d 1284 (2016) (court abused its discretion in basing it denial on factual findings unsupported by the record). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Generally, a district court utilizes the *Edgar* factors to guide its consideration of whether a defendant has demonstrated the good cause to withdraw a plea before sentencing: (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. These factors should not be applied mechanically and to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). These factors establish "'viable benchmarks'" for the district court when exercising its discretion, but the court should not ignore other facts that might exist in a particular case. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016).

Frazier failed to show the district court abused its discretion because a reasonable person could conclude the motion to set aside the plea should be denied. Both parties agree this issue falls somewhere between the second and third *Edgar* factors. Frazier argues his plea could not be understandingly made or fairly entered into because the plea agreement "is meaningless in preventing an Ohio prosecutor from charging [him]." Moreover, Frazier argues the plea agreement cannot bind Ohio authorities because they were not a party to the plea agreement and the State of Kansas lacked actual or apparent authority to act as an agent on behalf of Ohio authorities.

5

However, the evidence reflects Frazier entered his plea knowing his attorney had not spoken with Ohio authorities and they had not signed off on his plea agreement. The district court made a credibility determination, finding Ingels was frank, upfront, and honest with Frazier. It found Ingels had not made any false promises to Frazier and determined Ingels provided competent counsel to Frazier as she was working with him, was familiar with the law, and was familiar with the nature of the case. Frazier alleged Ingels told him she spoke with Ohio authorities but had advised the court the opposite at the plea hearing. The trial court did not find Ingels said anything about speaking with Ohio authorities, and the record of the plea hearing does not support Frazier's allegation.

Frazier was not misled or coerced about the possibility of being charged in Ohio. The State of Ohio was not a party to the plea agreement and did not sign it. However, Ohio prosecutors have not filed charges against Frazier, and there is no indication in the record Frazier will ever be charged in Ohio.

At the time of his plea, Frazier admitted understanding the charges against him and the terms of his sentence. Frazier admitted Ingels addressed his questions and concerns. Frazier stated he was satisfied with his attorney, he was competent to enter the plea, and he did so freely, voluntarily, and intelligently. Frazier entered the plea after Ingels advised him she had not spoken with Ohio authorities. Additionally, the record reflects Frazier gained a substantial benefit from the plea agreement and his ultimate plea because the State of Kansas dismissed six charges and recommended a durational downward departure of 96 months' imprisonment from the guideline sentencing range of 160 to 176 months' imprisonment for possession of heroin with intent to distribute. The district court did not abuse its discretion when it denied Frazier's presentence motion to withdraw his plea.

Affirmed.

6

* * *

LEBEN, J. concurring: Reginald Frazier's main complaint seems to be that there's a chance he still might be charged with federal offenses in Ohio. But at present, as far as our record shows, no Ohio charges have been brought against him, and there's no indication any ever will be. On that record, I find no abuse of discretion in the district court's denial of Frazier's motion to withdraw his plea.